IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SHEILA HARPER**                                                                                              **PLAINTIFF**

v.                                                                                       CAUSE NO. 1:23CV197-LG-RPM

**UNITED STATES OF
AMERICA, through the
Department of Navy and
Department of Defense**                                                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER DENYING
THE PARTIES' PENDING MOTIONS**

**BEFORE THE COURT** are the [33] Motion to Strike Expert Witness Evan McConnell filed by Plaintiff Sheila Harper as well as the [35] Motion to Exclude Causation Testimony of Dr. George Salloum and the [36] Motion for Partial Summary Judgment filed by Defendant United States of America in this lawsuit that arose out of a motor vehicle accident.  The United States' Motions have been fully briefed by the parties, but Harper did not file a reply in support of her Motion to Exclude Mr. McConnell's testimony.  After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds the parties' Motions should be denied.

BACKGROUND

On August 10, 2021, at an intersection on the Naval Construction Battalion Center in Gulfport, Mississippi, Harper's vehicle was struck by a Ford F-350 driven by Michael LaBeau in the course and scope of his employment with the United States Navy.  [1 ¶¶V-VII].  Harper filed an administrative complaint under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675, before filing this lawsuit against the United States. *Id.* at ¶IX. She designated her treating physician, Dr. George Salloum, as an expert witness. The United States asks the Court to exclude Dr. Salloum's opinion that the surgeries he performed on Harper's shoulders were causally connected to the accident. It also seeks partial summary judgment as to Harper's claim that her shoulder surgeries were necessitated by the accident. Harper asks the Court to strike the expert testimony of the United States proposed expert witness, Evan McConnell, who was designated as an expert in the fields of accident reconstruction and biomechanical engineering. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the parties' motions should be denied.

## DISCUSSION

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Therefore, testimony from a qualified expert is admissible only if it is both relevant and reliable. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). "Reliability is determined by assessing 'whether the reasoning or

methodology underlying the testimony is scientifically valid.' Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (internal citation omitted). "In short, the expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).

Where, as here, the district judge sits as the trier of fact,[1] "[m]ost of the safeguards provided for in *Daubert* are not as essential." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). That is because, "there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010).

## I. HARPER'S MOTION TO STRIKE THE UNITED STATES' EXPERT WITNESS EVAN McCONNELL

The United States has designated Mr. McConnell as a biomechanical engineer. Harper argues that Mr. McConnell provides medical opinions that are outside his field of expertise. She further asserts that his opinions are unreliable because he did not visit the accident scene, inspect the parties' vehicles, conduct interviews concerning the accident, or "perform any physical or virtual crash reproductions." [34 p. 5]. She claims that "Mr. McConnell's testimony should be limited to his area of expertise in reconstructing of an accident in the forces

---

[1] Since this lawsuit was filed pursuant to the Federal Tort Claims Act, it will be tried without a jury. *See* 28 U.S.C. § 2402.

exerted[,] but his testimony regarding medical causation or whether the forces are consistent with an injury to the body should be excluded." *Id.* at 7.

Mr. McConnell received a Bachelor of Science degree in Bioengineering from Clemson University in 2015 and a Master of Science degree in Biomedical Engineering from Virginia Tech University in 2017. [40-2 p. 4]. He is a registered professional engineer in Georgia, Alabama, and Tennessee, and an accredited traffic accident reconstructionist. *Id.* He has provided expert testimony in dozens of depositions and trials in Georgia, and he has testified as an expert at one trial in Alabama. [40-3 pp. 2–11].

Mr. McConnell prepared a seventeen-page report supported by numerous citations to peer-reviewed literature, a simulation of the angle of impact, photographs he reviewed, and two charts depicting compressive loads on the spine. [40-4]. He explained that he did not visit the scene of the accident because his review of the accident report and "Google Earth overviews of the accident site" revealed that "there were no specific roadway factors at this location that would influence the dynamics of the contacting vehicles in such a way as to affect the subsequent biomechanical analysis." *Id.* at 5. Since his reconstruction "did not include an at-fault analysis or an investigation into driver action prior to the accident . . . greater exploration into the geometry of the roadway, including various distances and roadway widths as well as sightlines" was not essential to his analysis. *Id.* at 7. He was also unable to inspect the vehicles due to their unavailability, but he explained that it is a "well-accepted and commonly used

practice in the field of vehicle accident reconstruction" to review photographs of the damage to the vehicles. *Id.*

He researched vehicles similar to Harper's Chevrolet using the National Highway Traffic Safety Administration's Crash Investigation Sampling System. *Id.* at 8. He explained that "[t]he purpose of this database is to assist scientists and engineers in analyzing roadway, vehicle, and occupant safety through published research studies." *Id.* Using the data he retrieved, he "concluded that the subject Chevrolet likely experienced a primarily rearward-directed delta-V of up to but no more than 7 mph in the accident." *Id.* The lack of airbag deployment further supported this determination. *Id.* at 8–9. He then performed simulations using engineering software called Human-Vehicle-Environment. *Id.* at 9.

> The results of the simulations indicated the possibility that the subject Chevrolet experienced a delta-V of 3 mph or less in the subject accident. However, due to the uncertain parameters upon which the simulations were based, this figure was not used as the maximum delta-V expected for the Chevrolet. The totality of the evidence, including the comparative examples described above as well as the various simulations, indicated that the subject Chevrolet's delta-V would not have been more than 7 mph but could have been considerably less than 7 mph.

*Id.* at 9–10.

In response to interrogatories, Harper claimed that she suffered injuries to her head, arms, wrists, neck, and shoulders in the accident. [40-4 p. 6]. Mr. McConnell reviewed Harper's medical records "to determine injuries diagnosed in her medical records, the nature of the injuries, and potential contribution of pre-existing conditions to tissue properties," which "follows the methodology for a

biomechanical assessment outlined in peer-reviewed and well-accepted literature."

*Id.* at 10.  He reached the following conclusions:

> 1. The contact between the left-rear of the Ford [driven by LaBeau] and the left-front of the Chevrolet [driven by Harper] would have been expected to result in a primarily rearward-directed change in speed (delta-V) of up to 6 miles per hour (mph) for the Chevrolet.
>
> 2. As a result of this contact, a driver of the Chevrolet would be expected to move forward with regard to the Chevrolet's occupant compartment.  This forward motion would be restrained by the seatbelt and would be expected to remain with a normal expectation of human motion.
>
> 3. The mechanisms associated with the traumatic tearing of the tendons of the rotator cuffs would not be expected for a Chevrolet driver in this accident.
>
> 4. The forces and motions expected for a Chevrolet driver's spine in the accident would not have been consistent with the mechanics associated with structural changes in the spine.
>
> 5. The forces and motions expected for a Chevrolet driver's shoulders in the accident would not have been consistent with the mechanics associated with structural changes in the shoulders.

[40-4 p. 4].

### A.  WHETHER MR. McCONNELL OFFERS INAPPROPRIATE MEDICAL OPINIONS

Harper cites *Oaks v. Westfield Insurance Co.*, No. CIV.A. 13-1637, 2014 WL 198161 (E.D. La. Jan. 16, 2014), and *Browns v. Regions Insurance, Inc.*, No. 14-813, 2016 WL 4703978 (E.D. La. Sept. 8, 2016), in support of her argument that Mr. McConnell is not qualified to offer opinions in this matter.  In *Oaks*, a biomechanical engineer who formerly practiced medicine in the United Kingdom opined that the force of the defendant's vehicle striking the plaintiff's vehicle was

insufficient to cause the plaintiff's injuries. 2014 WL 198161, at *2. The court held that the expert was not qualified to offer a medical causation opinion because he was not board certified in any medical specialty; he had not practiced clinical medicine in over a decade; and he had never practiced medicine in the United States. *Id.*

In *Browns*, the court held that the proposed medical causation testimony offered by a certified accident reconstructionist, who was also a licensed physician, was based on insufficient facts and data. 2016 WL 4703978, at *3. Specifically, the proposed expert did not review the plaintiff's imaging studies or perform a physical examination of the plaintiff, and his opinions conflicted with opinions of the plaintiff's treating radiologist and other treating physicians. *Id.*

The United States disputes Harper's assertion that Mr. McConnell is offering medical causation opinions. It has submitted an affidavit in which Mr. McConnell testifies:

> The biomechanical opinions I have generated do not attempt to ascertain an exact or medical cause of Plaintiff's claimed injuries. My findings establish that the mechanisms associated with the claimed injuries in the present case are not consistent with, or do not match up with, the forces and motions expected for an individual subjected to the vehicle dynamics described in my report. The findings also indicate that such an individual would be expected to experience higher forces in a wide variety of activities of daily living than what would be expected during this accident.

[40-1 p. 3].

Most courts that have addressed this issue have determined that biomechanical engineers are qualified "to render an opinion as to the forces

-7-

generated in a particular accident and the general types of injuries those forces may generate," but they are not qualified to offer opinions as to specific causation, i.e., "the precise cause of a specific injury." *See, e.g., Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 305 (6th Cir. 1997), *abrogated on other grounds by Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 515 & n.4 (6th Cir. 1998); *Bostick v. State Farm Mut. Auto. Ins. Co.*, 314 F. Supp. 3d 1265, 1276 (M.D. Fla. 2018), *aff'd*, 774 F. App'x. 600 (11th Cir. 2019) ("[I]t is well-established in the case law that biomechanical engineers . . . are qualified to testify about how forces may affect or injure an individual."); *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1377 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008) ("[B]iomechanical engineers typically are found to be qualified to render an opinion as to the forces generated in a particular accident and the general types of injuries those forces may generate.").

For example, a district court allowed an expert in the field of biomechanics to testify that a bicycle seat's design could lead to erectile dysfunction since he did not attempt to offer opinions concerning the specific medical cause of the plaintiff's impotency. *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 501 (D.N.J. 2002). Another court held that a biomechanical engineer was "qualified to testify as to whether the forces generated by rowing generally lead to certain kinds of injuries but not regarding the medical causation or the specific causes of Plaintiff or other SMU rower's [sic] injuries." *McGowan v. S. Methodist Univ.*, No. 3:18-CV-00141-N, 2024 WL 946954, at *2 (N.D. Tex. Mar. 4, 2024) (internal quotation marks and brackets omitted). Similarly, a court held that a biomechanical engineer may

testify only as to "the amount of force he believes was generated by the [subject collision] and the observed effect of such force on a hypothetical human body in a comparable accident," but he may not testify as to whether the amount of force in the subject collision actually caused the plaintiffs' injuries. *Collins v. Benton*, No. CV 18-7465, 2020 WL 3605942, at *8 (E.D. La. July 2, 2020).

Mr. McConnell's opinions pertain to general causation, such as the forces that an occupant of a Chevrolet would be subjected to in the car accident at issue. He has not issued any specific opinions concerning the cause of Harper's injuries. Therefore, Harper's argument that Mr. McConnell is not qualified to offer his opinions is not well taken.

### B. WHETHER MR. McCONNELL'S OPINIONS ARE RELIABLE AND RELEVANT

Harper argues that the *Oaks v. Westfield* decision and a Fifth Circuit opinion, *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999), support a finding that Mr. McConnell's opinions are unreliable and unhelpful due to his failure to visit the scene of the accident, interview witnesses, inspect the parties' vehicles, or "perform any physical or virtual crash reproductions." [34 p. 5]. However, the Fifth Circuit's decision in *Wilson* did not center around the reliability or relevance of the expert's opinions. *See Wilson*, 163 F.3d at 938. It found that the district court did not abuse its discretion in holding that the proposed expert was unqualified because the "[a]ppellees' voir dire and the court's own questioning revealed significant deficiencies in [the witness's] experience and professional training." *Id.*

As for *Oaks*, the district court held that a biomechanical engineer's proposed testimony was unreliable because his report did "not reconstruct the exact accident at issue. Rather, he either re-created a loosely similar accident or relied on prior testing that presented an allegedly similar scenario." 2014 WL 198161, at *2. The court further found that the engineer's opinion would "likely confuse the jury or cloud its common-sense fact-finding role." *Id.* It explained, "in cases where there is a simple collision such as there was in this matter, the jury can assess credibility and make appropriate factual findings without the aid of any expert testimony." *Id.*

Other district courts have held that a biomechanical engineer's opinions are reliable even where the expert has not personally inspected the vehicle or visited the accident scene. *See e.g., Collins v. Benton*, No. CV 18-7465, 2020 WL 3605942, at *6 (E.D. La. July 2, 2020); *Shaw v. United Airlines, Inc.*, No. CV H-17-267, 2018 WL 4362092, at *3 (S.D. Tex. Sept. 13, 2018); *Herrera v. Werner Enters., Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at *4 (W.D. Tex. Sept. 28, 2015). Mr. McConnell has explained that an inspection of the scene of the accident was not necessary due to the road conditions and nature of the accident. [40-1 ¶6(b); 40-4 p. 5]. He has also testified that the use of photographs in the field of accident reconstruction "is a well-accepted, repeatable, and reliable methodology supported by peer-reviewed literature," and he cited peer-reviewed articles supporting this methodology in his report. [40-1 ¶7(e)]. The Court finds that Mr. McConnell's opinions are supported by sufficient facts and data as well as an accepted peer-reviewed methodology. Furthermore, his testimony will assist the Court in

-10-

determining the amount of force generated by the accident.  Harper's Motion to Exclude Mr. McConnell's opinions is denied.

## II.  THE UNITED STATES' MOTION TO EXCLUDE DR. SALLOUM'S CAUSATION TESTIMONY

The United States argues that Dr. Salloum's causation opinion should be excluded because he did not rule out other possible causes of Harper's shoulder injuries, and he did not know that she had undergone two rotator cuff surgeries on her right shoulder prior to the accident at issue.  The United States further asserts that Dr. Salloum was not aware of "Harper's significant history of serious falls requiring various treatments."  [37 p. 6].  The United States contends that Dr. Salloum's causation opinion is deficient because it is solely based on the medical history related to him by Harper.  It further asserts that inconsistencies or errors in Dr. Salloum's medical records provide additional grounds for excluding his opinions as unreliable.

Harper responds that the arguments in the United States' Motion pertain to the weight and credibility of Dr. Salloum's testimony, not its admissibility.  She claims that the United States' arguments should be made during cross examination, a motion in limine, or closing argument.  She further notes that Dr. Salloum's deposition was a discovery deposition; thus, Harper's "counsel did not ask many questions regarding causation, impairment restrictions and future medical needs."  [43 p. 7].  She has not yet taken a trial deposition of Dr. Salloum to "expand and explore his opinions."  *Id.* at 4.  Finally, she disputes the relevance of her history of

-11-

falls and car accidents because "Dr. Salloum testified the recency of the prior injuries and car wrecks would be factored into his opinion." *Id.* at 9.

The United States has submitted excerpts of Harper's deposition, in which she testified that she was injured in several falls and motor vehicle accidents prior to the accident at issue. [36-1]. She testified that she suffered impingement and a rotator cuff tear to her right shoulder in a 2006 motor vehicle accident. [36-1 pp. 30, 36, 43–44]. Her medical records reveal that the rotator cuff tear was repaired on March 22, 2007. [36-1 p. 10]. She once again experienced severe right shoulder pain following a car accident on February 12, 2014. *Id.* at 69–71. Harper confirmed that she applied for Social Security disability after she injured her back when she fell on a rock on the beach in April 2014. *Id.* at 69–70. She was granted disability on August 18, 2017, and she remained on full disability when her deposition was taken on April 23, 2024. *Id.* at 51–52. She once again injured her right shoulder in a fall on January 14, 2016. *Id.* at 90. She underwent a second rotator cuff surgery on her right shoulder in March 2016. *Id.* at 94.

Nine days after the accident at issue, Harper was examined by Dr. Jeffrey Conrad at the Orthopedic Group in Alabama, who had previously treated her for right shoulder and neck pain. [36-13 p. 1]. She reported that she had experienced "increased pain and discomfort" since the accident. *Id.* Dr. Conrad noted that the range of motion in her left shoulder was normal, and her strength was "5/5 with range of motion." *Id.* She had "pain with elevation above 90 degrees" in her right shoulder, but her "strength [was] intact." *Id.* He opined that "[m]ost of her pain

seems to be coming from her C-spine . . . ." *Id.* He recommended scheduling an MRI of her C-spine. *Id.* Dr. Conrad confirmed these findings during a deposition, and he explained that he did not see any need for additional treatment on her shoulders at the time of her August 19, 2021, visit. [36-14 pp. 11–14].

Harper next sought treatment from Dr. Salloum, an orthopedic surgeon with twenty-four years of experience, on August 23, 2021. She was complaining of "bilateral shoulder pain." [36-15 p. 1; 43-2 p. 5]. Following examination, Dr. Salloum determined that she had suffered a "[t]raumatic rotator cuff tear" as well as "[s]train of muscle(s) and tendon(s) of the rotator cuff of unspecified shoulder." *Id.* at 3. He prescribed an injection of lidocaine and Kenalog and scheduled an MRI for both shoulders. [36-15 pp. 3–4].

Dr. Salloum has submitted a letter in which he explains that he initially saw Harper about thirteen days after the car accident at issue, and she was "complaining of neck pain [and] bilateral shoulder pain with pain radiating down into her arms." [35-3 p. 1]. He ordered an MRI of her neck and both shoulders. *Id.* The MRI of her right shoulder revealed that she had undergone previous surgery on her right shoulder, and the repair of her right rotator cuff was intact. *Id.* The MRI of her left shoulder showed that her left rotator cuff had a partial tear. *Id.* A nerve conduction study revealed that she had moderate bilateral carpal tunnel syndrome. *Id.*

On November 12, 2021, he performed "an arthroscopy with decompression, arthroscopic biceps Tina Deasis [sic], along with a rotator cuff repair and a left

carpal tunnel release" in order to treat her left shoulder and arm pain. *Id*. On April 6, 2022, he performed "a right shoulder arthroscopy with an arthroscopic, biceps tenodesis, decompression and distal clavicle resection, and she did have a recurrent cuff tear in the right shoulder and underwent [r]epair along with the right carpal tunnel release." *Id*. He offers the following opinion:

> I am not aware that the patient had sought any treatment for shoulder pain or hand numbness prior to her motor vehicle collision of August 10 of 2012. Therefore, within a reasonable degree of medical probability, I feel that the motor vehicle collision caused the left shoulder rotator cuff tear and the recurrent rotator cuff tear to the right shoulder and aggravated. [sic] Likely pre-existing carpal tunnel syndrome bilaterally. I anticipate no future medical costs with regards to these injuries at this point. I have discussed with the patient that she is at risk for another rotator cuff tear and therefore I have recommended lifting restrictions of no greater than 10 pounds with the elbows extended away from the body. I would also avoid prolonged overhead activity. I see no permanent disability associated with the injury.

*Id*. at 2. He further opines that she reached maximum medical improvement for both of her shoulder surgeries on October 13, 2022. *Id*.

During his deposition, Dr. Salloum testified that he did not have access to Harper's medical records and treatment history when formulating his opinion, so he could only rely on the medical history provided by Harper. [43-2 pp. 11-13]. He knew that she had previously undergone one rotator cuff surgery on her right shoulder, but he was unaware that she had actually undergone two prior rotator cuff surgeries on that shoulder. *Id*. He explained that he probably should have stated in the letter stating his opinions that he was not aware of any recent treatment on her shoulder. *Id*. He does not recall knowing that Harper was on full

disability, and he was not aware that Harper "had a series of serious falls" and multiple motor vehicle accidents prior to her first visit to his office. *Id.* at 14-15.

Dr. Salloum testified that he probably made an error on a medical record pertaining to Harper's follow up appointment on October 26, 2021, because it stated that tests on her right shoulder exam were negative, or normal. *Id.* at 22-23, 29. He explained that he probably did not examine her right shoulder during that visit; he was most likely focused on examining the left shoulder because he typically only treats one joint during a visit. *Id.* at 24.

To the extent that Harper argues that she should be allowed more time "to expand and explore" Dr. Salloum's opinions, her request is not well taken. All testifying experts, including treating physicians, must be timely designated pursuant to Fed. R. Civ. P. 26(a)(2)(A). *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882-83 (5th Cir. 2004); Local Civil R. 26(a)(2). Harper's expert designation deadline was February 5, 2024, [9 p. 4], so Harper was required to provide at least the following information by that date:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C); L.U.Civ.R. 26(a)(2).

Furthermore, Harper has the burden of proving by a preponderance of the evidence that Dr. Salloum's proffered testimony satisfies Rule 702 of the Federal Rules of Evidence. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). Therefore, it is Harper's responsibility to sufficiently develop Dr. Salloum's opinions

in order to demonstrate that his opinions satisfy the requirements of Fed. R. Civ. P. 702.

As for Harper's argument that the United States should have included its arguments concerning Dr. Salloum in a motion in limine, the United States currently seeks to exclude Dr. Salloum under the standards set forth in *Daubert* and Fed. R. Evid. 702.[2] The Case Management Order entered in this case required "*Daubert*-type motions challenging another party's expert" to be filed by May 22, 2024. [9 p. 5]. The Court established a separate deadline for motions in limine — twenty-one calendar days prior to the pretrial conference. *Id.* As a result, the United States' Motion to Exclude Dr. Salloum is not premature or otherwise improperly filed.

Turning to the United States' arguments, the Fifth Circuit has explained that "medical causation experts must have considered and excluded other possible causes of injury." *McNabney v. Lab'y Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987)). "This does not necessitate an exhaustive search that forces an expert to disprove or discredit every possible cause other than the one espoused by him; but, an expert must be aware of the plaintiff's *pertinent* medical history." *Id.* (emphasis added)

---

[2] A motion in limine is a motion made prior to trial to exclude evidence on highly prejudicial matters. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013); *Vaughn v. Hobby Lobby Stores, Inc.*, 539 F. Supp. 3d 577, 582 (W.D. La. 2021). The United States recently filed a separate [52] Motion in Limine arguing that Dr. Salloum's testimony should be limited to the information she provided pursuant to Fed. R. Civ. P. 26(a)(2)(C). The Court will address that Motion in a separate order after the parties have had the opportunity to fully brief the Motion.

(internal citations, brackets, and quotation marks omitted). Dr. Salloum testified that he was aware Harper had previous surgery on her right rotator cuff, and his medical records reflect that she informed him of that prior surgery. Furthermore, the United States has not identified any record of prior injury to Harper's left shoulder that Dr. Salloum should have considered before opining as to the causation of Harper's left shoulder injury. Harper's other accidents and injuries appear unrelated to her shoulder injuries; thus, at this time, the Court cannot fault Dr. Salloum for failing to consider them.

Dr. Salloum examined and performed surgery on Harper, and he has twenty-four years of experience as an orthopedic surgeon. The Court has not found any basis in the record for excluding Dr. Salloum's opinion that the accident caused Harper's left shoulder injury. Furthermore, there is testimony and evidence before the Court indicating that Dr. Salloum was aware of Harper's pre-existing right shoulder injury when he determined that the right shoulder injury that he surgically repaired was caused by the accident. Finally, while there is some confusion regarding Dr. Salloum's treatment and opinions concerning Harper's right shoulder, there is no danger of confusing or providing prejudicial information to a jury in the present case, and the Court will be in a better position to consider the United States' arguments concerning Dr. Salloum's testimony at trial. Therefore, the United States' Motion to Exclude Dr. Salloum is denied.

### III. THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States argues that it is entitled to "partial summary judgment in its favor as to Harper's claims for economic damages related to her shoulders and subsequent surgeries." [38 p. 1–2]. This request is based on the United States' argument that Dr. Salloum's opinions concerning the cause of Harper's shoulder injuries should be excluded. The Court has determined that Dr. Salloum's opinions should not be excluded at this time. Therefore, the United States is not entitled to partial summary judgment.

## CONCLUSION

The Court finds that Mr. McConnell and Dr. Salloum should be permitted to present their opinions at trial, and the Court will determine at that time how much weight to assign to their testimony. *See SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003), *aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005) ("*Daubert* requires a binary choice — admit or exclude — and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves."). Therefore, the parties' Motions to Exclude and the United States' Motion for Partial Summary Judgment are denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [33] Motion to Strike Expert Witness Evan McConnell filed by Plaintiff Sheila Harper is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [35] Motion to Exclude Causation Testimony of Dr. George Salloum filed by Defendant United States of America is **DENIED**.

-19-

**IT IS FURTHER ORDERED AND ADJUDGED** that the [36] Motion for Partial Summary Judgment filed by Defendant United States of America is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 23rd day of September, 2024.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE